IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

UNITED STATES OF AMERICA

v.  CRIMINAL ACTION NO. 3:11-00054

ERNEST JAMES JOHNSON

**MEMORANDUM OPINION AND ORDER**

On June 29, 2021, this Court granted Defendant's Renewed Motion for Appointment of Counsel and directed defense counsel to file briefing on Defendant's request for a sentence reduction. ECF No. 151. Defendant has since filed his Memorandum in Support of a Request for Sentence Reduction for Extraordinary and Compelling Reasons. ECF No. 152. For the reasons stated herein, the Court **GRANTS** the request and **REDUCES** Defendant's sentence to 159 months imprisonment.

**I. FACTUAL BACKGROUND**

On August 16, 2011, Defendant pled guilty, without a plea agreement, to ten counts of distributing cocaine base, or "crack," and a single count of prohibited possession of a firearm (Count Eleven). *See* Indictment, ECF No. 1; Guilty Plea, ECF No. 46. Defendant was also charged with a single count of carrying a firearm during and in relation to a drug trafficking offense (Count Ten). Indictment at 10. On September 14, 2011, a jury convicted Defendant of this charge. *See* Jury Verdict, ECF No. 75.

A Presentence Investigation Report ("PSR") was prepared to assist the Court at sentencing. ECF No. 103. In the PSR, the probation officer attributed a total of 106.38 grams of crack to Defendant, for a base offense level of 26. *Id*. at 8. The probation officer also recommended that

1

Defendant be classified as a career offender because he had two prior felony convictions for crimes of violence. *Id*. The relevant prior convictions were two Louisiana convictions for simple burglary and indecent behavior with a juvenile and a West Virginia conviction for first degree robbery. *Id*. at 12-15. These prior offenses and accompanying career offender designation raised Defendant's offense level to 32. *Id*. at 8.

After a three-level reduction for acceptance of responsibility, Defendant's final recommended offense level was 29. *Id.* at 9. When combined with the career-offender-mandated criminal history category VI, Defendant's advisory Guidelines range was 151 to 188 months in prison on these charges. *Id*. at 19. However, because the career offender designation on his conviction in Count Ten resulted in a Guidelines range of 360 months to life, his advisory Guidelines range was 360 months to life.[1] Had Defendant not been classified as a career offender, he would have had an offense level of 23[2] and a Criminal History Category of V[3], for an advisory Guidelines range of 84 to 105 months in prison, plus any sentence imposed on Count Ten (which carries a five year mandatory minimum).  U.S. Sent'g Guidelines Manual ("U.S.S.G.M.") ch. 5, pt. A (U.S. Sent'g Comm'n 2011).

At Defendant's sentencing on January 30, 2012, the Court generally adopted the recommendations in the PSR, including classifying Defendant as a career offender. *See* Sentencing Transcript at 29, ECF No. 110. However, the Court noted that the career offender designation made the advisory Guidelines range on Count Ten 360 months to life in prison. *See id.* at 95-96.

---

[1] As discussed further below, the Court ultimately did not apply the career offender enhancement to this conviction, and instead sentenced him to 72 months on the charge, which carries a mandatory minimum sentence of 60 months. *See* U.S.C. § 924(c)(1)(A).
[2] This calculation is based on the reported base offense level of 26 and assuming Defendant would have received the three-point acceptance of responsibility adjustment, as he did at the original sentencing.
[3] The PSR erroneously states that Defendant's twelve criminal history points would have placed him in a criminal history category of VI, but according to the 2011 U.S.S.G. Sentencing Table, twelve criminal history points resulted in a criminal history category of V.

This Court found "objectionable" the operation of the career offender Guidelines enhancement on this Count, and instead imposed a 72-month sentence on Count Ten, to be served consecutively with 188 months in prison on all other counts,[4] for a total term of 260 months imprisonment. *Id*. at 96-100.

Defendant filed a direct appeal, arguing that there was insufficient evidence to support his conviction on Count Ten, and the Fourth Circuit affirmed his conviction on September 11, 2012. ECF No. 112. After the *Johnson* decision, defendant filed a § 2255 petition which this Court dismissed because Defendant was not sentenced under the Armed Career Criminal Act ("ACCA"), and *Johnson* had not been applied to career offenders. *See* Order ECF No. 118; *see also Johnson v. United States*, 576 U.S. 591 (2015) (holding the residual clause of the ACCA unconstitutionally vague). Defendant has been appointed counsel twice to pursue claims under *Johnson* or any retroactive application of the Fair Sentencing Act provided by the First Step Act, both of which were found to have no basis. *See* ECF Nos. 124, 125, 127, 128, 143, 152. On June 29, 2021, the Court granted Defendant's most recent motion to be appointed counsel in this matter. ECF No. 151. It also ordered briefing on Defendant's Request for Sentence Reduction under 18 U.S.C. § 3582(c)(1)(a)(i). The matter has been fully briefed.

## II. APPLICABLE LAW

"Generally, a court may not modify a term of imprisonment once it has been imposed." *United States v. Wirising*, 943 F.3d 175, 179 (4th Cir. 2019), as amended (Nov. 21, 2019) (internal

---

[4] Defendant addresses the sentence for Count Eleven (Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1), arguing that it is unclear about whether he was sentenced as an Armed Career Criminal pursuant to 18 U.S.C. 924(e), and stating that the only way to impose a 188-month sentence for being convicted of a felon in possession of a firearm is if the ACCA enhancement applies. However, Defendant was not sentenced under 924(e), as the Court noted in his § 2255 appeal. *See* Order, ECF No. 121. This Court grouped all counts, except for Count Ten, and the remaining drug counts resulted in the Guidelines range of 151-188 months. Count Eleven played no specific role in the Court's determination of Defendant's sentence, where the base offense level was calculated based on drug weight.

3

quotations omitted) (citing 18 U.S.C. § 3582(c)). However, there are many exceptions to this rule. In 1984, Congress created a mechanism for federal inmates to seek what is now known as "compassionate release" under 18 U.S.C. § 3582(c)(1)(A). In 2018, through the passage of the First Step Act, Congress partially amended the compassionate release-statute. *See* First Step Act, Pub. L. No. 115-391, § 603, 132 Stat. 5194, 5239-40 (2018). As part of the Act, Congress amended Section 3582 and enabled courts to reduce a term of imprisonment if "extraordinary and compelling reasons warrant such a reduction." *See* 18 U.S.C. § 3582(c)(1)(A)(i); First Step Act § 603(b). However, before defendants may request such a reduction, defendants must ask the Bureau of Prisons ("BOP") to do so on their behalf. *See* 18 U.S.C. § 3582(c)(1)(A). If the BOP denies the defendant's request or does not respond within 30 days, the defendant may file a motion before the court. *Id*. If an inmate satisfies this administrative exhaustion requirement, courts may reduce the inmate's sentence if it (1) finds that extraordinary and compelling reasons warrant a sentence reduction, and (2) considers the relevant 18 U.S.C. § 3553(a) sentencing factors and determines the requested reduction is consistent with the "applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

When analyzing "extraordinary and compelling" reasons, "[t]he district court enjoy[s] broad discretion…." *United States v. Kibble*, 992 F.3d 326, 330 (4th Cir. 2021). However, reductions based on extraordinary and compelling reasons must be "consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). In the case of compassionate release motions under the statute, this consistency mandate "simply is not implicated, for the threshold reason that there currently exists no 'applicable policy statement[ ].'" *United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020). (quoting 18 U.S.C. § 3582(c)(1)(A). As a result, "district courts are 'empowered ... to consider *any* extraordinary and compelling reason

4

for release that a defendant might raise.'" *Id.* (quoting *United States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020) (emphasis added)). But the second consideration does not fall away completely because it is appropriate for district courts to consider § 1B1.13 of the Federal Sentencing Guidelines in defining what should be considered an extraordinary and compelling circumstances warranting a sentence reduction. *United States v. Jenkins*, 22 F.4th 162, 169-70 (4th Cir. 2021) ("Thus, the district court may consider any extraordinary and compelling reasons raised by the defendant as well as review § 1B1.13 to determine whether there is a sufficient 'extraordinary and compelling circumstance' warranting a sentence reduction.").

With this framework in mind, the Court will examine whether Defendant can first demonstrate that if sentenced today, the career offender designation would not be applicable. If so, the Court will examine whether this change can constitute "extraordinary and compelling circumstances," and if they do so here. Finally, the Court will consider the relevant § 3553(a) sentencing factors.

### III. DISCUSSION

#### A. Exhaustion

As an initial matter, Defendant has exhausted his administrative remedies. He attached the warden's denial to his request for reduction in sentence from April 16, 2021. *See* ECF No. 148-1.

#### B. Extraordinary and Compelling Circumstances

*i. Career Offender Designation*

To argue that there has been a change in circumstances sufficient to constitute extraordinary and compelling reasons, Defendant must first show that, if convicted today, the career offender designation would be inapplicable. Under the United States Sentencing Guidelines ("U.S.S.G."), a convicted defendant will receive an enhanced sentence if the defendant is a "career

5

offender." U.S.S.G. Manual § 4B1.1. A career offender is a defendant: (1) who is "at least eighteen years old at the time the defendant committed the instant offense of conviction;" (2) whose instant offense is "a felony that is either a crime of violence or a controlled substance offense;" and (3) who "has at least two prior felony convictions of either a crime of violence or a controlled substance offense." *Id*. § 4B1.1(a). A crime of violence is defined in the Guidelines as:

> [A]ny offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
>
>> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>>
>> (2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).
>
> *Id*. § 4B1.2(a).

Defendant's predicate crimes of violence at the time of sentencing included three prior offenses: a 1996 Louisiana conviction for simple burglary, a 1997 Louisiana conviction for indecent behavior with a juvenile, and a 2007 West Virginia conviction for first-degree robbery. PSR at 12-14. Defendant does not dispute that his robbery offense remains a crime of violence for sentencing purposes under *Stokeling*. Def.'s Mem. in Supp. at 8 (citing *Stokeling v. United States*, 139 S. Ct. 544 (2019)). However, Defendant argues that, if sentenced today, the other prior convictions would not qualify as crimes of violence, and thus would not count as predicate offenses for the career offender enhancement. *Id*. at 7-10. Because the Government argued that an intervening change in career offender designation is not an extraordinary and compelling reason, it initially did not discuss whether Defendant's previous crimes would qualify as crimes of violence. *See* Govt.'s Resp. at 11-14, ECF No. 153. In later briefing, it conceded that Defendant's crimes of simple burglary and indecent behavior with a juvenile no longer constitute crimes of violence as defined under the Guidelines. *See* Govt.'s Supp. Brief at 2-7, ECF No. 158.

6

In determining whether a prior conviction qualifies as a crime of violence, courts must employ a "categorical approach." *Taylor v. United States*, 495 U.S. 575, 588 (1990) ("[T]he enhancement provision always has embodied a categorical approach to the designation of predicate offenses"); *see also Descamps v. United States*, 570 U.S. 254, 261 (2013). The categorical approach focuses on the elements, rather than the facts, of the prior offense, and sentencing courts applying the categorical approach must look at how the law underlying the conviction defines the offense, not how the defendant's particular conduct constituted an offense on a particular occasion. *See United States v. Proctor*, 28 F.4th 538, 545 (4th Cir. 2022).[5] The question becomes whether the full range of conduct covered by the statutory definition of the state crime, including the "most innocent conduct," would qualify as a crime of violence for purposes of § 4B1.2(a). *See id.* (quoting *United States v. Middleton*, 883 F.3d 485, 488 (4th Cir. 2018). For a prior conviction to qualify as a Guidelines predicate offense, "the elements of the prior offense [must] 'correspond[ ] in substance' to the elements of the enumerated offense." *United States v. Cabrera–Umanzor*, 728 F.3d 347, 350 (4th Cir. 2013) (quoting *Taylor*, 495 U.S. at 602).

  *a. Louisiana Simple Burglary*

Defendant was convicted of simple burglary in Louisiana in 1996. PSR at 12. At the time Defendant was sentenced in 2012, burglary was an enumerated offense in Guidelines' definition of crime of violence. U.S.S.G § 4B1.2(a)(2) (2011). The Sentencing Commission later removed burglary from the enumerated offenses in an amendment that took effect on August 1, 2016. *Id*. App. C., Amendment 798. Therefore, a burglary conviction can now only be a crime of violence

---

[5] While these cases discuss the ACCA's definition of "violent felony," the same has been used as guidance in interpreting the Guidelines' definition of "crime of violence." *United States v. Montes-Flores*, 736 F.3d 357, 363 (4th Cir. 2013).

for Guidelines purposes if it has an element the use of intentional force. *Id*. § 4B1.2(a)(1); *Johnson*, 559 U.S. at 140.

At the time of Defendant's offense conduct, Louisiana's simple burglary statute provided: "[s]imple burglary is the unauthorized entering of any dwelling, vehicle, watercraft, or other structure, movable or immovable, with the intent to commit a felony or any theft therein, other than as set forth in Section 60." La. Stat. Ann. § 14:62 (1996). As the Government notes, the offense could simply be committed without resorting to any force, and thus, the offense does not currently constitute a crime of violence as defined in § 4B1.2.

### b. Louisiana Indecent Behavior with a Juvenile

Defendant was also convicted of indecent behavior with a juvenile under Louisiana law in 1997. PSR at 13. At the time, Louisiana law provided that, "[i]ndecent behavior with juveniles is the commission by anyone over the age of seventeen of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons, with the intention of arousing or gratifying the sexual desires of either person."[6] La. Stat. Ann. § 14:81 (1997). The language of this statute is categorically broader than the enumerated offense of "forcible sex offense" under the Guidelines. The Louisiana offense encompasses acts committed with juveniles who are sixteen or younger. But to qualify as a forcible sex offense under §4B1.2, the offense requires an act with a juvenile who has not yet reached sixteen. *See* 18 U.S.C. § 2241(c); U.S.S.G. § 4B1.2, cmt. n. 1. Further, for juveniles who are at least twelve but under sixteen, § 2241 requires the use of force, threats,

---

[6] The Court notes that the current offense under Louisiana law is a divisible statute prohibiting alternative forms of conduct including lewd or lascivious acts as well as the transmission, delivery, or utterance of communications to juvenile. *See* La. Stat. Ann. § 14:81 (2021); *United States v. Duron-Rosales*, 584 F. App'x 218, 218-219 (5th Cir. 2014). A divisible statute would enable the court to employ the modified categorical approach. *United States v. Dozier*, 848 F.3d 180, 183 (4th Cir. 2017). However, the 1997 offense was indivisible, and the Court is limited to using the categorical approach.

rendering one unconscious, or administering drugs or intoxicants. *Id*. Lastly, § 2241 is violated by conduct with juveniles under twelve, a class of juveniles narrower than the class in the Louisiana statute.

Additionally, the offense does not meet the "force" clause. While "lewd and lascivious act" includes an act done upon the person, it also includes "indecent sexual displays in the presence of children under the age of seventeen." *State v. Interiano*, 868 So. 2d 9, 7 (2004); *see also State v. Domangue*, 119 So. 3d 690, 695 n. 5 (La. Ct. App. 2013) (contrasting this offense with molestation under La. Stat. Ann. §14:81.2, which has a use of force element, where this offense requires only "the mere exertion of physical effort necessary to commit the lewd act"). The offense can be committed without any type of force, or even contact, with a juvenile and does not meet the definition under the force clause. Thus, this conviction does not qualify as a predicate offense for the career offender enhancement.

### *ii. Change in Designation as a Career Offender*

Because Defendant, if sentenced today, would no longer qualify as a career offender, the Court must analyze whether this change in the Guidelines advisory range can constitute extraordinary and compelling reasons. The Government argues that a change in classification as a career offender categorically does not rise to the heightened standard required under *McCoy*, while Defendant argues that it does, because of the resulting disparity in the advisory Guidelines range. *See e.g.*, Govt.'s Resp., ECF No. 153; Def.'s Mem. in Supp., ECF No. 152.

*McCoy* specifically addressed whether the First Step Act's changes to sentencing under 18 U.S.C. § 924(c) could support compassionate release under § 3482(c)(1)(A)(i). 981 F.3d at 285-87. The Court found that "the severity of the defendant's 924(c) sentences and the extent of the disparity between the defendants' sentences and those provided for under the First Step Act" were

9

permissibly treated as "extraordinary and compelling reasons." *Id*. at 285. However, the Court emphasized "that these judgments were the product of individualized assessments of defendant's sentence," and that the district court properly relied on "full consideration of the defendants' individual circumstances." *Id*. at 286. Further, it clarified that the existence of stacked § 924(c) sentences did not necessarily satisfy the requirements for extraordinary and compelling reasons in all circumstances. *Id*. The Fourth Circuit stressed that this prong of 3582(c)(1) remains a "heightened standard" and that only the defendants who can meet that heightened standard may obtain relief. *Id*. at 287 ("It was not unreasonable for Congress to decide that it did not want sentence reductions based on § 403 of the First Step Act to be as widely available as relief under § 404 [the crack cocaine sentence reduction] – and thus to limit those reductions to truly extraordinary and compelling cases.").

The Government essentially argues that *McCoy's* language that the Sentencing Commission's policy statement "remains helpful guidance" means that the Court should look at the specifically enumerated factors when considering a sentence reduction, and that a sentencing law change is not akin to these other circumstances. *See* Govt.'s Resp. at 11-14. Further, any change in sentencing law would provide a basis for all previously sentenced defendants to seek reduction of their sentences under § 3582(c)(1)(A), which is too sweeping, and not what the Fourth Circuit envisioned when it confirmed that this release valve is reserved for "the truly exceptional cases." *Id.* It contends that Defendant's case does not rise to the heightened standard required for "extraordinary and compelling reasons." *Id*. Defendant responds that district courts are empowered to consider any extraordinary and compelling reason for release. Def.'s Mem. in Supp. at 4-6, ECF No. 152. He argues that those reasons exist in this case because, if sentenced today, he would face

10

a significantly shorter sentence and because he has pursued opportunities for education and rehabilitation. *Id*. at 7.

The enumerated extraordinary and compelling reasons focus on defendant's medical condition, age, or family circumstances, none of which are at issue here. *See* U.S.S.G. § 1B1.13, cmt. n.1. The final scenario, entitled "other reasons" serves as a catch-all, permitting other reasons, alone or in combination with the express scenarios, to serve as a basis for compassionate release. *Id*. This catch-all provision could reasonably encompass a change such as a subsequent change in sentencing law that would result in grossly disproportionate sentencing. "District courts in this circuit have universally affirmed that the fact that a defendant, if sentenced today for the same conduct, would likely receive a dramatically lower sentence than the one he is currently serving constitutes an extraordinary and compelling reason justifying potential sentence reduction under § 3582(c)(i)(A)(i)." *United States v. Elzey*, No. 09-0288, 2022 WL 316717, at *2 (D. Md. Feb. 2, 2022) (internal quotation marks omitted) (citing *United States v. Decator*, 452 F. Supp. 3d 320, 324 (D. Md. 2020); *United States v. McCoy*, 981 F.3d 271, 286 (4th Cir. 2020)).

And some courts have applied this principle to grant compassionate release to persons who no longer qualify as career offenders, considering it along with a prisoner's disciplinary record while incarcerated and what programs he availed himself of in granting motions for compassionate release. *See United States v. Shaw*, No. 13-0025, 2021 WL 3007266, at *5 (W.D. Va. July 15, 2021); *United States v. Trice*, No. 13-0034, 2021 WL 402462, at *3 (W.D. Va. Feb. 3, 2021); *United States v. Minter*, No. 2:12-CR-00191, 2021 WL 1894454, at *4 (S.D.W. Va., May 11, 2021); *United States v. Vaughn*, No. 5:08-CR-00266, 2021 WL 136172, at *3-4 (S.D.W. Va. Jan. 13, 2021).

This Court agrees that a change in career offender status is compelling, but merely one factor to be taken in conjunction with the defendant's record, subsequent behavior, and the entire circumstances in each case. *See United States v. Myers*, 2021 WL 2401237, at *3, (D. Md. June 11, 2021) ("In sum, *McCoy* teaches that in considering a defendant's motion for sentence reduction based on subsequent changes in the law, the court should conduct an individualized and holistic assessment of the defendant's circumstances.") The court should "make their own independent determination of what constitutes an 'extraordinary and compelling reason' as consistent with the statutory language," and the U.S.S.G. commentary remains helpful guidance. *McCoy*, 981 F.3d at 284.

Here, if sentenced without the career offender enhancement in 2012, Defendant's Guidelines range would have been 84 to 105 months for all counts (besides Count Ten, which carried a mandatory minimum of 60 months).[7] Instead, with the career offender enhancement, his Guidelines range (excluding Count Ten) was 151 to 188 months. If sentenced today, Mr. Johnson would also benefit from a change in the drug offense tables, resulting in a sentence of 70 to 87 months.[8] Instead, he was sentenced to 188 months on those charges, which, even assuming he was sentenced at the highest end of the Guidelines range today, is a difference of 101 months or 8.4 years. This disparity could qualify as an extraordinary and compelling reason warranting compassionate release. However, the Court must still conduct and individualized and holistic assessment of Defendant's individual circumstances. *McCoy*, 981 F.3d at 286.

---

[7] Again, because the Court did not apply the career offender enhancement to Count Ten, it is excluded from the discussion of calculations here.

[8] The amount of drugs attributable to Defendant was 106.38 grams of cocaine base, which would now result in a base offense level of 24. Assuming Defendant received the three-level reduction based on acceptance of responsibility, as he did at the original sentencing, he would have a base offense level of 21 and a criminal history category of V.

*iii. Defendant's Individual Circumstances*

As of May 9, 2022, Defendant has been incarcerated approximately 133.5 months. *See* PSR at 2 (Defendant was detained on March 22, 2011). Assuming he would have received the same, consecutive 72 months sentence on the gun count, which carries a five-year mandatory minimum, if sentenced at the top of the Guidelines range without the career offender enhancement today, he would face a total sentence of 159 months. This sentence would consist of 72 months on the gun charge and 87 months on the drug offenses. This is significantly shorter than the 260 months sentence he received, and the Court finds that reduction to 159 months is appropriate.

Moreover, Defendant's behavior while in BOP custody is an important indicator of whether he remains a danger to the community. *See* 18 U.S.C. § 3582(c)(1)(A)(ii). Courts place significant weight on a defendant's post-sentencing conduct because it "provides the most up-to-date picture of [his] 'history and characteristics.'" *See Pepper v. United States*, 562 U.S. 476, 492 (2011) (citing 18 U.S.C. § 3553(a)(1)); *see also United States v. Chambers*, 956 F.3d 667, 675 (4th Cir. 2020). Defendant has taken advantage of educational opportunities and made progress towards his GED. *See* Inmate Education Data, ECF No. 152-1. He has taken many classes while incarcerated, including ones on employment, parenting, and anger management. *Id*.

However, Defendant has also sustained several disciplinary infractions since his arrival at the BOP, approximately thirteen over the past ten years. *See* Inmate Discipline Data, ECF No. 152-2. Most of the offenses, however, do not involve weapons or violence, and all were handled administratively. Further, they have decreased in frequency over the past few years. Given the alternatives available to the Bureau of Prisons and the Government to address such conduct, they should not preclude a reduced sentence. *See United States v. Ayala*, 540 F. Supp. 2d 676, 680 (W.D. Va. 2008) (awarding reduced sentence over Government's objection based on infractions

13

while incarcerated, noting that administrative remedies and further criminal prosecution are adequate to address in-custody issues). Accordingly, Defendant has shown concerted efforts at rehabilitation, and even though he has sustained infractions while in prison, the Court cannot say that they warrant a 101-month increase in prison time.

### C. 3553(a) factors

Furthermore, the § 3553(a) factors support Defendant's release for time served. Such a sentence appropriately considers the nature and circumstances of his conduct, as well as his characteristics and criminal history. This sentence will reflect the seriousness of his offense, promote respect for the law, and provide just punishment. Additionally, the sentence will afford adequate deterrence and avoid unwarranted sentence disparities.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Request for a Reduction in Sentence is **GRANTED**. The Court **ORDERS** that Defendant's sentence of incarceration be reduced to 159 months.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel and the defendant, the United States Attorney's Office, the United States Probation Office, and the United States Marshals Service.

ENTER: May 12, 2022

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE